# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**TABETHIA T.,[1]**

      **Plaintiff,**

**v.**                               **Civil Action No. 2:21-cv-26**

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Tabethia T. seeks judicial review of the Commissioner of Social Security's denial of her claim for disability benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act.  Specifically, Plaintiff argues that the Commissioner's Administrative Law Judge ("ALJ") erred by weighing Plaintiff's decision not to pursue additional medical treatment, contending that the ALJ lacked the proper qualifications to reach medical conclusions.  The Plaintiff also argues that the ALJ erred by failing to adequately develop the record.  As a result, she contends that the ALJ's opinion is not supported by substantial evidence.  This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure.  For the reasons stated below, this Report recommends that the court affirm the final decision of the Commissioner.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

## I.   <u>**PROCEDURAL BACKGROUND**</u>

Plaintiff filed for DIB on May 24, 2018, and for SSI on May 25, 2018. (R. 10). She alleged a disability onset date of March 1, 2015, in both applications. <u>Id.</u>; <u>see also</u> (R. 225, 232). The Social Security Administration ("SSA") denied her applications initially, (R. 65-96), and again on reconsideration, (R. 101-34). In March 2019, Plaintiff requested an administrative hearing, (R. 164-65), which took place on March 27, 2020, (R. 41). Plaintiff was represented by counsel, and a vocational expert testified at the hearing. (R. 10).

On May 27, 2020, the ALJ found Plaintiff was not disabled during the period of alleged disability and denied her DIB and SSI claims for benefits. (R. 25). The ALJ determined that Plaintiff's residual functional capacity ("RFC") enabled her to perform light work with some limitations, (R. 16), and jobs existed in significant numbers in the national economy that could accommodate Plaintiff's limitations, (R. 24). Thus, Plaintiff was not disabled within the meaning of the Act and was ineligible for benefits. (R. 25). The Appeals Council declined to review the ALJ's findings, making the Commissioner's decision final. (R. at 1).

On January 12, 2021, Plaintiff filed her complaint in this court. Compl. (ECF No. 1, at 2). Plaintiff seeks judicial review of the Commissioner's final decision that she was not entitled to an award of SSI, claiming that "[t]he conclusions and findings of fact of the Defendant are not supported by substantial evidence and are contrary to law and regulation." <u>Id.</u> ¶ 1 (ECF No. 1, at 2). On October 6, 2021, Plaintiff moved for summary judgment. (ECF No. 19). Plaintiff contends that the ALJ erred in assigning an RFC that she could perform light work, arguing that this conclusion was not supported by substantial evidence. Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") (ECF No. 20, at 9-10). Plaintiff primarily argues that the ALJ improperly injected her own lay opinion of the medical evidence in fashioning the RFC. <u>Id.</u> at 10-13. Plaintiff further

alleges that the ALJ failed to adequately develop the record. Id. at 12-13. Lastly, Plaintiff contends that she should qualify for disability under the medical vocational guidelines. Id. at 14 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.12). In response, the Commissioner maintains that the ALJ's determination is supported by substantial evidence, that the ALJ merely recited undisputed facts rather than offer a medical opinion, and that the record was adequately developed. Def.'s Mem. Supp. Cross-Mot. Summ. J. ("Def.'s Mem.") (ECF No. 23, at 9-12). Plaintiff replied, arguing that the ALJ allegedly failed to build an accurate and logical bridge from the evidence to her conclusion. ("Pl.'s Reply") (ECF No. 24, at 2). This case is now before the court to resolve the parties' cross-motions for summary judgment. (ECF Nos. 19, 22).

## II.    **FACTUAL BACKGROUND**

Plaintiff was born on February 20, 1970, and at the time of the ALJ's decision, she was 50 years old, and thus a person closely approaching advanced age. See (R. 23); 20 C.F.R. § 416.963. Plaintiff was insured under the Social Security Act until June 30, 2020. (R. 12). She has not engaged in substantial gainful activity since March 1, 2015, the alleged onset date. (R. 13). She has received at least a high school education. (R. 291) (passed general education development exam). She has reported past work as a corrections officer, cook, server and retail sales clerk. (R. 23); see also (R. 47, 291).

A.    **Plaintiff's Medical Visits and History of Back Pain**

On July 1, 2015, Plaintiff was evaluated by Krishna Brahma Sastry Topalli, M.D., for reported back pain and leg pain with feet numbness. (R. 397-98). The examination showed pain at the L5 sacroiliac joint and along her lower spine, and she had a positive Patrick-Faber test[2] and

---

[2] The FABER (Flexion, Abduction, and External Rotation) or Patrick's Test involves applying pressure to the patient's inside knee while he or she lays supine on the examination table, ankle crossed over the

straight leg raising test.[3]  (R. 397).  Magnetic resonance imaging ("MRI") showed a diffuse disc bulge and enlargement of the facet joints (L4-L5 and L5-S1) with some left and right nerve root compression.  Id.  Dr. Topalli assessed Plaintiff with chronic pain syndrome, lumbar spondylosis (osteoarthritis in the lower back), and degeneration of certain discs.  (R. 398).  Plaintiff was prescribed pain medication.  (R. 399-400).  On July 15, 2015, Plaintiff returned to Dr. Topalli, complaining of bilateral back and leg pain.  (R. 389).  She received an epidural steroid injection.  (R. 389-91).

The next day, Plaintiff visited John Shutack, M.D., Chesapeake Regional Neuroscience Institute ("CRNI"), for an initial surgical consultation.  (R. 622-26).  She reported arm, neck, and lower back pain, which included weakness, tingling, and numbness.  (R. 622).  On exam, Plaintiff had a normal gait and station; normal muscle strength, bulk, and tone; and normal sensation.  (R. 625).  However, an examination revealed that the cervical (neck) spine had a decreased range of motion, and the lumbar (low back) spine had pain with extension/flexion and a decreased range of motion.  (R. 624).  Dr. Shutack found evidence of severe spinal cord compression and overactive reflexes, which was secondary to cervical spondylosis (neck arthritis), disc herniations (C5-C6 and C6-C7), and a narrowing of the spinal canal.  (R. 625-26).  Dr. Shutack recommended surgery.  Id.

---

opposite knee.  A positive test yields pain, tightness, or immobility.  Faber Test, Sacroiliac Joint Pain, https://www.sacroiliac-joint-pain.org/faber-test/ (last visited Mar. 30, 2022).

[3] The straight leg test involves raising the extended leg while the patient lays supine on the examination table.    Gaston  O.  Camino  Willhuber  &  Nicholas  S.  Piuzzi,  Straight  Leg  Raise  Test, https://www.ncbi.nlm.nih.gov/books/NBK539717 (last visited Apr. 4, 2022).  The test is used to diagnose nerve root irritation.  Id.

In August 2015, Dr. Shutack performed an anterior cervical discectomy and fusion ("ACDF") at the affected discs (C5-C6 and C6-C7).[4]  (R. 420-23).  At a two-week follow-up appointment, Plaintiff's neck felt better, despite some back pain radiating into her shoulder and arms. (R. 614).  By the following month, Plaintiff reported improvement "but [she did] complain of neck pain that radiates to the left shoulder and upper arm." (R. 612).

Plaintiff was not treated from August until November 2015.  On November 2, Plaintiff visited Sheri Yeatts, PA-C (CRNI), again reporting neck pain and arm weakness. (R. 609).  On examination, Plaintiff had a decreased range of motion and tenderness to palpation, but she also displayed normal strength, tone, and bulk; and a normal gait and station. (R. 611).  X-rays showed that the ACDF hardware remained in place. (R. 612).  PA-C Yeats found that cervical paraspinal (neck) muscle spasms were causing Plaintiff's pain. Id.  Plaintiff was advised to avoid lifting, pulling, or pushing heavy objects. Id.

Almost two years later, on October 11, 2017, Plaintiff returned to Dr. Topalli, reporting muscle weakness, back pain, and numbness in her feet. (R. 696).  Dr. Topalli noted that although the ACDF relieved Plaintiff's neck pain, she continued to experience neck muscle spasms. Id.  An MRI showed mild enlargement of facet joints (L4-L5/L5-S1) that was causing nerve root compression. Id.  She displayed pain with an active range of motion and trapezius trigger point pain. (R. 696-97).  She received an injection. (R. 697).  Later that month, Dr. Topalli found that Plaintiff had a normal gait and normal motor strength, tone, and bulk, but also tenderness in her lower back and hyperactive reflexes. (R. 692-93).

---

[4] An ACDF is an operation to remove degenerative discs, after which the surgeon fuses the bones together. Anterior Cervical Discectomy and Fusion (ACDF), NeuroSpine Center of Wisconsin, https://neurospinewi.com/news/anterior-cervical-discectomy-and-fusion/ (last visited Apr. 4, 2022).

On February 26, 2018, Plaintiff returned to PA-C Yeatts, reporting mid and lower back pain, as well as pain and tingling that radiated into her feet. (R. 608). PA-C Yeats noted that under Dr. Topalli's care, Plaintiff received "several lumbar injections which provided mild temporary symptom relief." Id. On examination, Plaintiff's tailbone was tender, and she had a decreased range of motion in her neck and lower back. Id. The examination also showed normal strength, muscle tone, and bulk, with normal sensation. (R. 609). PA-C Yeatts diagnosed chronic low back pain and found that Plaintiff's L5-S1 disc suffered from severe degeneration and collapse that failed conservative treatment. Id. PA-C Yeatts recommended lumbar spine surgery, but Plaintiff "wishe[d] to consider her options" and agreed to follow-up. Id.

On June 29, 2018, during a follow-up evaluation, Dr. Topalli encouraged Plaintiff to seek a second opinion on surgery because injections would not provide long-term relief. (R. 651). The following day, Plaintiff returned to Dr. Topalli complaining of lower back pain that extended down her left leg. (R. 642-45). An examination revealed swelling and tenderness in Plaintiff's pelvis and lower back, including at the sacrum, as well as pain with an active range of motion. (R. 646). Plaintiff also had a positive Patrick-Faber test and supine straight leg raising test. Id. Plaintiff was advised to seek surgery, but she had not made "up her mind about the surgery," and was "willing to try [a] back brace." (R. 645).

In January 2019, Plaintiff began receiving pain management at Eastern Virginia Medical School. (R. 736-39). An electromyography exam showed evidence of that Plaintiff's peripheral nerves were malfunctioning ("peripheral neuropathy"). (R. 753). Plaintiff returned at regular intervals for medication refills, (R. 704-29), and received a steroid injection in May 2019, (R. 722-24).

**B.    Opinion Evidence**

At the initial stage of Plaintiff's disability application process, Robert McGuffin, M.D., a state agency physician, reviewed Plaintiff's medical records, (R. 74-76), as did Richard Luck, Ph.D., a state agency physiological consultant, (R. 72-73).  At the reconsideration stage, Joseph Leizer, Ph.D., a state agency physiological consultant, reviewed Plaintiff again, (R. 108-09), as did Bert Spetzler, M.D., (R. 111-12), a state agency medical consultant.

### 1.    Initial Evaluations of Robert McGuffin, M.D., and Richard Luck, Ph.D.

Dr. McGuffin opined that Plaintiff could perform light work requiring her to occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand and/or walk for a total of 6 hours; sit for a total of 6 hours; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally stoop, kneel, crouch, and crawl.  (R. 74-76).  Plaintiff was assigned a light work capacity. (R. 79).

Dr. Luck determined Plaintiff had a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself. (R. 72).  Dr. Luck further noted that, other than increased anxiety due to frustration from her physical conditions, Plaintiff was stable and indicating "normal thoughts, memory, concentration, behavior, speech and appearance." (R. 73).  Dr. Luck noted that Plaintiff handled her own finances and got along with others.  Id.  He thought her "capable of simple, routine work."  Id.

### 2.    Reconsideration Evaluations of Joseph Leizer, Ph.D. and Bert Spetzler, M.D.

On reconsideration, Dr. Spetzler agreed with Dr. McGuffin's limitations, (R. 111-12), also finding that Plaintiff could perform light work,  (R. 115-16).  Likewise, Dr. Leizer essentially agreed with Dr. Luck, assessing the same limitations.  (R. 109).  Dr. Leizer noted that Plaintiff was

doing well on medication with a stable mood, she was capable of a standard routine work, and the prior administrative medical finding was supported by and consistent with the evidence. Id.

## C.   Testimony Before the ALJ

The ALJ questioned Plaintiff at the hearing on March 27, 2020. (R. 41-58). At the same hearing, the ALJ heard testimony from Edith Edwards, a vocational expert. (R. 41, 58-63).

### 1.   Plaintiff's Testimony

Plaintiff testified that she is divorced and lives with her daughter and three-year-old grandchild. (R. 43-44). She reported a high school equivalency degree and past work as a corrections officer, a cook, a food server, and as a retail salesclerk. (R. 44-47).

Plaintiff testified she had a cervical fusion in 2015, after which she stopped working because of pain and tension in her neck and arms. (R. 47-48). She said that she still experienced neuropathy in her hands. (R. 48). She said that her hands tingle when driving, her arms tingle when bathing, and raising her arms causes pain in her shoulders. Id. She described that her daughters help her with washing her hair, and she has problems turning her neck while driving. Id. Plaintiff said that her daughter does the cleaning and the grocery shopping. (R. 52). But Plaintiff also testified that she has a driver's license and can drive to the store and to her doctor's appointments, and that she can cook, make trips to the store, watch television, color in a book, and play games and do puzzles on her iPad. (R. 44, 51-52). Plaintiff also said that she spends most of the day reclining with her legs up at least waist level, takes naps on and off during the day, and experiences concentration and memory problems. (R. 56-58).

Plaintiff testified to having back pain for 19 years that has progressed. (R. 48-49). She has tried injections, medication, and physical therapy, but she still has back pain. (R. 49). Plaintiff

further testified that her doctor recommended a second surgery to insert bracket lifters and place imitation cartilage, but she had not followed up on the recommendation. (R. 49, 54).

### 2.   Hearing Testimony from the Vocational Expert

The ALJ's hypothetical for the Vocational Expert ("VE") posited a person of the same education, and work experience as Plaintiff with the following limitations:

> [T]hat person was limited to light work, could perform all postural activities occasionally except no limitation on balancing. Was limited to simple, routine tasks with only occasional contact with the public. . . . [And] the hypothetical claimant could only be on her feet four hours a day, but could change positions roughly at 30- to 60-minute intervals and staying on task while in the alternate positions[.]

(R. 60). The VE testified that a person of Plaintiff's age, work experience, and RFC could not perform Plaintiff's past relevant work. Id. The vocational expert testified that the hypothetical individual could perform unskilled light work as a clerical checker (DOT # 222.687-010) with 15,000 jobs nationally; a routing clerk (DOT # 222.587-038) with 19,000 jobs nationally; and an inspector (DOT # 649.687-018) with 24,000 jobs nationally.[5] (R. 59-60).

The VE further testified that if an individual were to be off task more than ten percent of the time or absent two or more days per month, all work would be precluded, (R. 62). On cross-examination by Plaintiff's counsel, the VE testified that if the hypothetical person was reduced to occasional reaching or two hours of standing in an eight-hour workday, these limitations would preclude all full-time work at light or sedentary. (R. 63).

---

[5] Before the ALJ limited the hypothetical to an individual who could "change positions" at certain intervals, the VE testified that additional jobs (such as a housekeeper) would have been available, or these same jobs would have been available in greater numbers. See (R. 60-61).

### III.    STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  It consists of "more than a mere scintilla" of evidence, but the evidence may be somewhat less than a preponderance.  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), superseded by statute 20 C.F.R. § 416.927(d)(2); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)."  Craig, 76 F.3d at 589.  The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed.  Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017).  Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law.  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

### IV.    ANALYSIS

Plaintiff's brief identifies two errors in the ALJ's decision that she claims warrant remand. First, Plaintiff contends that the ALJ's findings are unsupported by substantial evidence because

the ALJ improperly drew her own medical conclusions that Plaintiff's reluctance to undergo surgery was indicative that Plaintiff's conditions were not severe, although no evidence supported that medical conclusion. Second, Plaintiff argues that the ALJ erred by failing to fully and fairly develop the record. As explained below, this Report finds no error in the ALJ's analysis; there is substantial evidence supporting the ALJ's conclusion regarding Plaintiff's RFC, and the ALJ did not fail to fully and fairly develop the record. Accordingly, this Report concludes that remand is not warranted, and therefore recommends that the court affirm the Commissioner's decision.

## A.    Framework for SSA Disability Evaluation

A person may file for and receive DIB under the Social Security Act if he or she meets the insured status requirements of 42 U.S.C. § 423(c)(1), is under the retirement age as defined in § 416 of the Act, and is under a disability as defined in § 423(d). Title XVI of the Act provides SSI benefits to "financially needy individuals who are aged, blind, or disabled regardless of their insured status." Bowen v. Galbreath, 485 U.S. 74, 75 (1988) (citing 42 U.S.C. § 1382(a)). As relevant here, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A)); 20 C.F.R. §§ 404.1505(a), 416.905(a). An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful activity that exists in the national economy. See 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

SSA regulations set out a sequential analysis which ALJs use to make their determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Specifically, the regulations direct the ALJ to answer the following five questions:

1.  Is the individual involved in substantial gainful activity?

2.  Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to do basic work activities?

3.  Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?

4.  Does the individual's impairment or combination of impairments prevent him or her from performing any relevant past work?

5.  Does the individual's impairment or combination of impairments prevent him or her from performing any other work?

An affirmative answer to question one, or a negative answer to questions two, four, or five, means the claimant is not disabled. An affirmative answer to questions three or five establishes disability. The claimant bears the burden of proof during the first four steps; if the analysis reaches step five, the burden shifts to the Commissioner to show that other work suitable to the claimant is available in the national economy. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(3), 404.1520b, 416.920(a)(3), 416.920b. This includes "(1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age." Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967)). Ultimate responsibility for making factual findings

and weighing the evidence rests with the ALJ.  Hays, 907 F.2d at 1456 (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

**B.      The ALJ Decision Currently Before the Court for Review.**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date until the hearing date.  (R. 13).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post C5 through C7 anterior cervical discectomy with fusion; diffuse disc bulge and mild facet hypertrophy at L4-L5 and L5-S1 and severe degeneration and collapse of L5-S1; peripheral lower extremity length dependent sensory polyneuropathy; and depression.  Id.  At step three, the ALJ found that Plaintiff did not suffer from a listed impairment or combinations of impairments that met or medically equaled the severity of one of the listed impairments.  (R. 14).  The ALJ developed a finding regarding Plaintiff's RFC.  (R. 16).  She determined Plaintiff was able

> [t]o perform light work as defined in 20 [C.F.R. §] 404.1567(b) and [§] 416.967(b), except for the following: the claimant can only stand and / or walk for four hours in an eight hour work day (due to back pain); the claimant can perform all postural activities on an occasional basis, except for balancing, and she can perform unlimited balancing; and the claimant is limited to simple routine tasks, consistent with unskilled work, without production quotas.

(R. 16).  At step four, the ALJ concluded that the claimant is unable to perform any past relevant work.  (R. 23).  At step five, the ALJ found work in the national economy Plaintiff could perform and therefore she was not disabled.  (R. 23-24).

**C.      The ALJ Did Not Insert Her Own Lay Opinion for That of Medical Professionals.**

Plaintiff first argues that the ALJ's determination is unsupported by substantial evidence because she believes the ALJ rejected the only record medical opinions and constructed the RFC out of "whole cloth."  Pl.'s Mem. (ECF No. 20, at 10).  Plaintiff argues that the ALJ's conclusion was unsupported by substantial evidence and, therefore, the "only option left for the ALJ was to

interpret [the medical] data and insert her own lay medical opinion." Id. at 12.  In support, Plaintiff observes that the ALJ found the state agency medical consultants' opinions to be "somewhat persuasive." Pl.'s Mem. (ECF No. 20, at 10); see also (R. 21).  Plaintiff quotes the ALJ's remark that "[Plaintiff's] impairments have worsened slightly since the reconsideration level since surgery has been recommended," after which the ALJ stated that "the claimant has not followed up with the surgeon or sought a second opinion so she is not receiving treatment other than medication from pain management." Pl.'s Mem. (ECF No. 20, at 10-11) (quoting R. 21).  Plaintiff argues that, when the ALJ notes that Plaintiff has not sought additional treatment, she is improperly "playing doctor" under the Fourth Circuit's precedent. Pl.'s Mem. (ECF No. 20, at 11) (discussing standard from Lewis, 858 F.3d at 868-69).  Plaintiff misconstrues Lewis v. Berryhill.

The Fourth Circuit's opinion in Lewis is readily distinguishable from the present case.  There, the Court held it was improper for the ALJ to characterize the claimant's treatment record as "conservative" in weighing the credibility of the medical testimony offered because that characterization was difficult to reconcile with the claimant's "documented and exhaustive" medical history in that case. Lewis, 858 F.3d at 868-69.  Here, the ALJ did not minimize Plaintiff's medical history.  She merely stated that surgery had been recommended and that Plaintiff had not followed up. (R. 21).  More importantly, the ALJ did not characterize the fact or state that she was using it as a basis for crediting or discrediting other testimony. See id.  Furthermore, Lewis ultimately turned, not just on the characterization of the claimant's treatment history, but on the lack of a factual basis for that characterization in the record. Lewis, 858 F.3d at 869.  Here, it undisputed that Plaintiff was recommended surgery and has not followed up on that recommendation to date.  (R. 49, 54).  It is not "playing doctor" for the ALJ to rely on that

undisputed evidence. See Lewis, 858 F.3d at 869. Plaintiff has not followed up on recommended surgery, and the ALJ's reliance on that fact was not evidence of error. (R. 49, 54).

Plaintiff also contends that Arakas v. Commissioner, Social Security Administration, 983 F.3d 83, 108-09 (4th Cir. 2020), is applicable to the present case, again arguing that the ALJ improperly used her lay opinion to evaluate the clinical findings' significance. Pl.'s Mem. (ECF No. 20, at 11-12). However, Arakas is also inapposite. In Arakas, the ALJ, when reviewing an MRI in which a medical expert found clear evidence of chronic cervical spasm, inserted his belief "that an MRI would not document a chronic condition of spasm." Id. at 109. Unlike in Arakas, in which the ALJ disputed the medical expert's interpretation, the ALJ here did not correct a perceived error by a medical professional. See id.; see also Kelly v. Berryhill, 732 F. App'x 558, 561 (9th Cir. 2018) (finding error in the ALJ's substitution of her opinion for that of the treating physician in holding that medical imaging did not support a disabling impairment); Hoyt v. Colvin, 553 F. App'x 625, 627 (7th Cir. 2014) (finding error when the ALJ interpreted an electromyography exam and MRI as inconsistent with Plaintiff's complaints of pain, despite physician's testimony that the tests were consistent). Nor does Plaintiff identify any instances when this occurred. See generally Pl.'s Mem. (ECF No. 20). Plaintiff lists numerous examples of clinical findings in the record, but Plaintiff does not list a single example of the ALJ correcting those findings or making her own medical determinations based upon them. Id. at 12.

Here, the ALJ reviewed the clinical findings and weighed their significance in assessing the credibility of other evidence to conclude whether Plaintiff was disabled, which is her role. See (R. 21). For example, the ALJ reviewed the clinical findings regarding Plaintiff's tenderness along the spine and sacrum, as well as her records of normal strength, muscle tone, bulk, and sensation. (R. 21); see, e.g., (R. 625, 646). The ALJ then, without reinterpreting the clinical findings, weighed

those clinical findings that against Plaintiff's testimony that she had to lie down all day in order to assess that statement's credibility. (R. 21.) This is not the ALJ substituting her own lay opinion for that of a medical expert; rather, it is her weighing and applying those clinical findings in her analysis of the legal conclusion of disability. See id. Thus, the ALJ did not improperly substitute her lay opinion for that of medical professionals.

**D.     The ALJ's Determination That Plaintiff Could Perform Light Work Is Supported by Substantial Evidence.**

Plaintiff also argues that there was insufficient evidence to show that Plaintiff can sit for up to six hours and stand or walk for up to two hours, which is a requirement for performing sedentary work. Pl's Mem. (ECF No. 20, at 13-14). The RFC assesses how the claimant's "physical and mental limitations . . . affect what [he or she] can do in a work setting." 20 C.F.R. § 416.945(a)(1). In fashioning the RFC, the ALJ will consider "all of the relevant medical and other evidence." § 416.945(a)(3); see also SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) ("The RFC assessment must be based on all of the relevant evidence in the case record[.]" (emphasis in original)). Generally, claimants are responsible for producing evidence at this stage. § 416.945(a)(3).

Plaintiff's primary argument is that she cannot sit for up to six hours and stand or walk for up to two hours, a requirement to perform sedentary work. See Pl.'s Mem. (ECF No. 20, at 13-14). She relies on her testimony that she spends most of the day reclining with her legs up at waist level. Id. (citing R. 56-57). However, the ALJ concluded that Plaintiff's testimony regarding her condition's severity was inconsistent with the medical evidence of record, and therefore weighed that testimony against all the evidence of record. (R. 18). Although Plaintiff testified that she lies down all day with her legs elevated, (R. 51-52, 56-57), Plaintiff also testified that she could drive to the store and to appointments, cook simple meals, watch television, play games and do puzzles

on her iPad, and fold laundry, all of which demonstrate ability to perform simple physical and mental tasks. See (R. 44, 51-54, 58). Objective medical evidence also shows that she had normal strength, muscle tone, bulk, and sensation, which is at odds with amount of time that Plaintiff claims she spends reclining. See, e.g., (R. 625, 646). The ALJ was within her discretion to find that these statements were not entirely consistent and to consider that inconsistency in fashioning the RFC. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (finding hearing testimony inconsistent with complaints of pain).

Furthermore, the RFC determination is supported by the state medical and psychological consultants, with any deviations from those expert opinions being drawn in Plaintiff's favor. See (R. 21-22). Administrative medical findings are no longer granted specific weight,[6] but the ALJ instead considers the "persuasiveness" of the records. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ is only required to explain the most important factors of "supportability" and "consistency." §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ found that the medical consultants' opinions were only "somewhat consistent," and thus only "somewhat persuasive," but did assign weight to some of their findings. (R. 21-22). Notably, however, the ALJ reduced Plaintiff's capacity based on the inconsistency. Id. Here, the fact that two state consultants found that Plaintiff could stand and walk for six hours and sit for six hours a day—longer than the ALJ concluded—strengthens the conclusion that the ALJ's RFC is supported by substantial evidence. See (R. 74-75, 111).

This appeal is not an opportunity to relitigate the case. See Craig, 76 F.3d at 589; Hays, 907 F.2d at 1456. The ALJ identified sufficient evidence to support the RFC. See (R. 16). As

---

[6] On January 18, 2017, the SSA adopted new rules for considering medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c. The new rules apply to all claims filed after March 27, 2017. Id. Because Plaintiff filed her claims in May 2018, (R. 10), the new rules apply.

exhibited above, the ALJ carefully considered the entire range of medical and subjective evidence. See (R. 18-22). The ALJ properly weighed the testimony to which Plaintiff points, as well as other relevant evidence in her favor, against the conflicting statements in her testimony and the subjective and objective medical evidence, concluding that Plaintiff could walk or stand for four hours in an eight-hour workday. See id. Because the Commissioner's findings are thus supported by substantial evidence, they should be affirmed. Richardson, 402 U.S. at 390.

**E.     The ALJ Built a Clear Bridge Between the Evidence and Her Conclusion.**

In her reply brief, Plaintiff argues that the ALJ failed to build an accurate and logical bridge from the evidence to her conclusion. Pl.'s Reply (ECF No. 24, at 2). Plaintiff raises this objection primarily regarding the ALJ's determination that the evidence supported a reduction of walking and standing from six hours to four hours based on reports of chronic pain and radiculopathy. Id. Plaintiff also contends the standing and walking limitation does not account for her peripheral neuropathy. See id. This is incorrect. Plaintiff's peripheral neuropathy was clearly accommodated because ALJ addressed it immediately before limiting Plaintiff to standing and walking four hours in an eight-hour workday.[7] See (R. 21-22). Therefore, the argument that Plaintiff's peripheral neuropathy was unaccounted for in the RFC has no merit.

ALJs are required to clearly and logically explain how the evidence supports their rulings. Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). Here, the ALJ identified reliant evidence and connected it to the RFC determination. See (R. 16-23). The ALJ pointed to numerous entries in Plaintiff's medical records justifying her decision to set Plaintiff's standing and walking RFC

---

[7] The ALJ's opinion is considered as a whole, and the ALJ is not required to cite applicable evidence in every portion of the opinion. See Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011); Nicole M. v. Saul, No. 3:19-CV-437-HEH, 2020 WL 4740475, at *3 (E.D. Va. Aug. 14, 2020); cf. Rice v. Barnhart, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (rejecting formality of having ALJ repeat evidence on different steps).

below some medical experts' recommendations. (R. 21-22.)  First, the state agency consultants' opinions indicated "severe impairments [of] spine disorders, depression, and anxiety[.]" (R. 21). However, the ALJ specified that records did not support a severe impairment of anxiety, which was a demonstrable inconsistency. Id.; see also (R. 381-88) (assessing depression and insomnia). The ALJ also found, in contrast to the consultants, that Plaintiff had a severe impairment of peripheral neuropathy. (R. 21); see, e.g., (R. 708-09).  These inconsistencies provide substantial support for the ALJ's deviation on the standing limitation.  The ALJ further noted that Plaintiff's "impairments have worsened slightly since the reconsideration level since surgery has been recommended," rendering the consultants' opinions "only somewhat persuasive" on the standing and walking limitation, although she upheld their other limitations as consistent with the record. See (R. 21-22).  The ALJ's statements build a clear bridge between the RFC and the ALJ's evidentiary basis, satisfying the legal requirement to build a clear connection. See Monroe, 826 F.3d at 189.

F.     **The Record Was Adequately Developed to Support the ALJ's RFC.**

Plaintiff also argues that the ALJ failed to properly develop the record on Plaintiff's back conditions, yielding an RFC that she claims is unsupported by substantial evidence.  Pl.'s Mem. (ECF No. 20, at 12-13).  An ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record," even when the plaintiff's "evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) (citations omitted).  "The key consideration is whether the record contained sufficient medical evidence for the ALJ to make an informed decision regarding the claimant's impairment." Lehman v. Astrue, 931 F. Supp. 2d 682, 692-93 (D. Md. 2013) (quoting Craft v. Apfel, 164 F.3d 624, 1998 WL 702296, *3 (4th Cir. 1998) (unpublished table opinion)) (cleaned up).  However, the "ALJ is under no obligation to

19

supplement an adequate record to correct deficiencies in a plaintiff's case." Id. at 693 (citing Rice v. Chater, 53 F.3d 329, 1995 WL 253134, at *2 (4th Cir. May 1, 1995) (unpublished table opinion)). Plaintiff argues that because the medical opinion evidence only covered the timeframe up to reconsideration, and because there was later medical evidence (including complex medical imaging), the ALJ lacked the necessary opinions and should have ordered additional examinations. Pl.'s Mem. (ECF No. 20, at 12-13). In this case, there was substantial record evidence supporting the conclusion that Plaintiff was not disabled during the timeframe alleged.

Plaintiff's primary argument rests on the foundation that other medical evidence was admitted after the last medical expert, and that the ALJ, as a layperson, was ill-equipped to interpret it. Id. at 13. However, the fact that the ALJ is a layperson does not mean that she cannot assess the medical evidence in crafting Plaintiff's RFC. An RFC "is an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." Felton-Miller v. Astrue, 459 F. App'x 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). Therefore, any "argument that the ALJ's finding is not supported by substantial evidence because the ALJ is a layman and did not obtain an expert medical opinion . . . is without merit." Id. at 230.

Plaintiff also argues that the ALJ erred by not seeking out an additional medical opinion, in addition to the two of record, to help the ALJ interpret the medical evidence. Pl.'s Mem. (ECF No. 20, at 13). However, the ALJ "is not required to function as the claimant's substitute counsel . . . ." Bell v. Chater, 57 F.3d 1065, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) (unpublished table opinion) (quoting Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994)); see also Loving v. Astrue, No. 3:11cv411, 2012 WL 4329283, at *5 (E.D. Va. Sept. 20, 2012). Plaintiff was represented by counsel during the hearing, (R. 41), and the same firm continues to represent Plaintiff now, see Pl.'s Mem. (ECF No. 20, at 15). Further, after the hearing, the ALJ accorded

Plaintiff 14 days to submit additional documents—a deadline that was extended by an additional 15 days at Plaintiff's request—but Plaintiff failed to submit additional evidence, (R. 10); see also (R. 363). Thus the ALJ's narrow duty to develop the record was not triggered here.

Lastly, the RFC accommodated Plaintiff's slightly worsened condition. The ALJ noted that Plaintiff had been recommended surgery but had not followed up. (R. 21). Furthermore, when the ALJ weighed Plaintiff's testimony, which was given two years after her surgery recommendation, she found inconsistencies in Plaintiff's claims about her condition's severity. See id.; see also (R. 51-52). "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) (citations omitted). An error is significant if the result likely would have been different. Ross v. Berryhill, No. 3:18-CV-42, 2019 WL 289101, at *12 (E.D. Va. Jan. 3, 2019) (discussing harmless error doctrine), adopted by 2019 WL 281191 (Jan. 22, 2019). Although no error has occurred here, as the ALJ's findings are supported by substantial evidence, Plaintiff has also failed to demonstrate how the result would have been different with an additional medical expert. Because of inconsistencies within Plaintiff's own testimony and between Plaintiff's testimony and the medical evidence, along with Plaintiff's failure to seek treatment for two years on her own initiative, additional testimony likely would not have altered the result. See (R. 18-21). Plaintiff argues that "[w]ithout an updated medical opinion, it is impossible to know the full extent of Plaintiff's limitations." Pl.'s Mem. (ECF No. 20, at 13). However, the burden of production and proof rests with Plaintiff, and it is her burden to pursue and produce evidence supporting her disability claim. Pass, 65 F.3d at 1203. Because Plaintiff has not shown that an additional medical opinion would likely change the result, and because Plaintiff failed when given the opportunity—

and an extension—to produce additional evidence, Plaintiff has not shown that the record was insufficiently developed. See (R. 10, 363).

### G.      Plaintiff Does Not Qualify for Disability Under the Medical Vocational Grids.

Finally, Plaintiff contends that she should be found disabled under the medical vocational grids ("Grids") because, at the time of the ALJ's decision, she was 50 years old and thus she is a person closely approaching advanced age. Pl.'s Mem. (ECF No. 20, at 14) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.12). The Grids are tables that apply during Step Five of the sequential evaluation process, and they

> consider the individual's RFC, age, education, and work experience and direct findings of "disabled" or "not disabled." Each grid considers only the strength or exertional component of a claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of his disability. The grid rules are only met where they are exactly met.

Cobbs v. Colvin, No. 1:15-1972, 2016 WL 3085906, at *11 (D.S.C. Apr. 1, 2016) (first citing 20 C.F.R. Pt. 404, Subpt. P, App. 2; then quoting Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); and then quoting SSR 83-11, 1983 WL 31252, at *1 (Jan. 1, 1983)), R. & R. adopted by 2016 WL 3059854 (May 31, 2016) (cleaned up).

Plaintiff claims that section 201.12 of the Grids applies, which section directs a disability finding for those closely approaching advanced age with unskilled or no prior work experience. Pl.'s Mem. (ECF No. 20, at 14). However, this section does not apply to Plaintiff because the ALJ's RFC was limited to light work, and section 201.12 applies to individuals only capable of sedentary work. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1. Thus, the Grids are not "exactly met" in Plaintiff's case. Cobbs, 2016 WL 3085906, at *11 (quoting SSR 83-11, 1983 WL 31252, at *1). Because Plaintiff's ability to perform light work is supported by substantial evidence, Plaintiff is not disabled under the Grids, and this argument has no merit.

## V.   **RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that the court GRANT the Commissioner's Motion for Summary Judgment (ECF No. 22), DENY Plaintiff's Motion for Summary Judgment (ECF No. 19), and AFFIRM the Commissioner's finding of no disability.

## VI.   **REVIEW PROCEDURE**

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.      A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/

Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
April 7, 2022